## Elmer Benefiel, Appellee, v. Pure Oil Company, Appellant.

Heard in this court at the February term, 1944. Opinion filed February 28, 1944.

SMITH, McCOLLUM & RIGGLE, of Flora, and VINSON, ELKINS, WEEMS & FRANCIS and ALLEN C. HUTCHESON, JR., all of Houston, Texas, for appellant.

MILO D. YELVINGTON, of Newton, for appellee.

MR. PRESIDING JUSTICE CULBERTSON delivered the opinion of the court.

This in an appeal from a judgment of the circuit court of Jasper county, in the sum of $435, and costs, in favor of appellee, Elmer Benefiel (hereinafter called plaintiff), and as against appellant, The Pure Oil Company (hereinafter called defendant).

The evidence discloses that the defendant was the lessee of certain premises in Jasper county pursuant to an oil and gas lease, upon which wells were drilled and in which certain "blow-pits" were constructed for

the purpose of receiving sediment and other impurities drained from the tanks. It was the normal, usual practice to use such pits in connection with oil well construction and production. Several months after the oil company, lessee, had been operating three oil wells on the land under such lease, an agricultural lease of the same premises was given to plaintiff, subject to the oil lease then in force thereon. In the latter part of September 1942, two of the cattle belonging to the plaintiff, which were being pastured on the premises by the plaintiff, were found dead and a third became sick and died on the following morning. Plaintiff instituted an action against the oil company in a justice of the peace court, in which action judgment was entered against defendant, and the case was appealed by defendant and tried *de novo* in the circuit court of Jasper county, before a jury. It was plaintiff's contention that the cattle died from the effects of drinking oil, salt water, or other refuse out of defendant's blowpits. At the close of the evidence the defendant filed a motion for directed verdict, but the court below refused to direct the verdict in favor of defendant and entered judgment on the verdict of the jury, in favor of plaintiff, in the sum of $435, and costs. A number of errors are assigned by defendant, but the basic question for determination by the court below, and for the determination of this court, is whether or not the lessee oil company was negligent in failing to fence the blowpits so as to keep plaintiff's cattle from drinking therein.

As pointed out in Summers Oil and Gas, permanent edition, section 652, the lessee, under an oil and gas lease, has the right to possession of so much of the surface of the land as is reasonably necessary to enable such lessee to perform the obligations imposed upon him by the lease. Such lessee may dig slush pits and drainage ditches, and construct storage tanks, under the ordinary form of producer's lease. A subse-

quent agricultural lessee of the same premises (such as plaintiff) has an interest which is servient to the dominant right of the oil and gas lease first granted for the use of the premises, in a manner consistent with the rights therein granted. It is thus apparent that the defendant in the instant case would not be liable to the plaintiff for any damages sustained by plaintiff, in the absence of negligence on part of defendant. The only question which arises, therefore, in the case before us, is whether the failure of the defendant to fence the blow-pits to keep plaintiff's cattle out, constituted a breach of duty to plaintiff so as to impose liability on defendant.

As an aid to consideration of the issue before this court it should be observed that the rule has established in this State that it is the duty of the owner of animals to keep them fenced in to avoid trespass on land in possession of another, and it is not the duty of the owner of land to fence such trespassing animals out (*Bulpit v. Matthews,* 145 Ill. 345).

It is the contention of the defendant in this cause that under its prior oil and gas lease it was entitled to exclusive possession of the land upon which the blow-pits were constructed, and that plaintiff's cattle, in legal effect, were trespassers when they got in or around such pits. We cannot agree that in all cases which might arise that a prior holder of an oil and gas lease would have no duty to the livestock of a subsequent agricultural lessee other than not to engage in wilful and wanton conduct which might injure such livestock. The only question before the court in the instant case is whether or not there is a positive obligation upon the prior oil and gas lessee to construct fences around the blow-pits for the purpose of protecting the cattle of the subsequent agricultural lessee.

We have not been cited to any Illinois case, nor have we been able to discover a case in this jurisdiction, determining this specific question. An identical case,

however, has been directed to our attention, which arose in the State of Texas. In the case of *Pitzer & West v. Williamson* (Tex. Civ. App.), 159 S. W. (2d) 181, an action had been instituted for damages to livestock caused from drinking refuse near oil wells operated by the defendants in that case. The court in that case states:

"We have been cited to no authority, nor have we found anything discussing the duty of an oil operator to fence the area used in his operations, in order to keep out livestock owned by the lessor. In the present case, unless there was a duty upon the part of the lessees to fence the area involved in their oil operations, there could have been no negligence in failing to do so.

"According to the authorities it appears that the lessee has the dominant estate and the lessor has the servient estate in so much of the leased premises as may be required in the oil operations provided for in the lease. . . . The same authorities also hold that the rights of each must be exercised with due regard to the rights of the other. The lease in question contains no express provision with reference to fencing the area used by the lessee.

"We do not find it necessary to undertake to lay down any general rule with reference to the duty, if any, of the lessee to fence the area being used by him when the machinery, tanks, or other articles thereon might become dangerous if livestock of the owner should come upon such portion of the leased premises.

"In the present case it appears from the undisputed evidence that for a number of years prior to the time the livestock in question were injured the lessees knew of the farming and livestock operations of the plaintiff, and the tenant of the landowner, and also that the tenant knew of the oil operations of the lessees and of the presence of the slush pits and of their dangerous character so far as livestock were concerned. . . .

We are not able to find anything from the agreement of the parties or from the particular circumstances of this case, which would impose upon the lessees any duty to maintain the fences in question. . . . And, hence, there could be no predicate for the finding of negligence.''

The observations of the Texas court apply equally to the case before this court, and under the facts and circumstances in this case we can find no basis upon which the defendant could have been found guilty of negligence in failing to fence the blow-pits. The motion for directed verdict should, therefore, have been granted by the court below and the verdict of the jury cannot be justified.

The judgment of the circuit court of Jasper county is, therefore, reversed, and judgment is entered here in favor of defendant, the Pure Oil Company, and as against plaintiff, Elmer Benefiel.

*Reversed, and judgment entered here.*